UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

                    Plaintiff,

v.

AMIN HASANZADEH,

                    Defendant.

Case No. 20-cr-20594
Hon. Denise Page Hood

_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO
SUPPRESS DEFENDANT'S STATEMENTS [D/E 61]**

On November 6, 2019, agents interviewed Mr. Hasanzadeh after his arrest. The interview was video recorded. *See* Exhibit 1 (Interview Recording, Filed In The Traditional Manner). Hasanzadeh made his initial appearance in duty court that same afternoon. ECF No. 5, PageID.19.

In his motion, Hasanzadeh claims that his video-recorded statement was not voluntary because his *Miranda* rights were read to him in English (instead of Farsi, his first language) and because he did not understand the purpose of the interview. ECF No. 61, PageId.339. Strangely—and tellingly—Hasanzadeh did not provide the Court with a copy of the video-recorded interview. The reason is obvious. The recording unambiguously shows that the motion is legally and factually baseless.

It is black-letter law that the voluntariness of a *Miranda* waiver is examined "primarily from the perspective of the police, such that where [the] police had no

1

reason to believe that [the defendant] misunderstood the warnings, . . . there is no basis for invalidating [the] *Miranda* waiver." *United States v. Ramamoorthy,* 949 F.3d 955, 964 (6th Cir. 2020). And, here, there is simply nothing in the video that would suggest that Hasanzadeh did not speak and understand English. Hasanzadeh spoke in coherent English throughout the 4 ¾ hour interview, never giving the interviewing agents any indication that he did not understand what was happening.

This was consistent, moreover, with everything known about Hasanzadeh. Hasanzadeh is highly educated and lived in the United States for nearly 9 years at the time of the interview. He worked in academia and in the private sector for years, where he spoke English, even claiming that his English was "advanced." He has repeatedly admitted, under penalty of perjury, that he reads and understands English, and he has never requested an interpreter when being interviewed as part of his naturalization application or when appearing in court in this case. In the end, nothing would have led the interviewing agents to conclude that Hasanzadeh needed a Farsi interpreter to understand his rights.

Finally, a suspect need not know the subject-matter of the interview—or that criminal charges had even been filed—to voluntarily proceed with an interview. *Colorado v. Spring*, 479 U.S. 564, 576-77 (1987). Because it is meritless, Hasanzadeh's motion should be denied without an evidentiary hearing.

## I.    Relevant Background

### a.    Defendant's Arrest and Interview

On October 31, 2019, the Government filed a criminal complaint against

Hasanzadeh charging him with interstate transportation of stolen goods (18 U.S.C.

§ 2314), visa fraud (18 U.S.C. § 1546), and conspiracy to defraud the United States

(18 U.S.C. § 371). ECF No. 1, PageID.1. Specifically, Hasanzadeh was charged

with lying to the U.S. government about his prior military service in Iran, *id.* at

PageID.12-14, and with using his personal email accounts to send his prior

employer's confidential, proprietary, and valuable technology to his brother in

Iran, without his prior employer's knowledge or permission. *Id.* at PageID.8-12.

The criminal complaint also alleged that Hasanzadeh's brother was affiliated with

Iranian defense companies involved in missile and nuclear weapon delivery system

research, *id.* at PageID.5, and that the exported technology had dual-use

applications, including in the aerospace industry, *id.* at PageID.6.

On the morning of November 6, 2019, agents arrested Hasanzadeh at his

Ypsilanti, Michigan apartment and executed a search warrant at the same location.

Hasanzadeh was transported to the Federal Bureau of Investigation's Ann Arbor

Resident Agency where he was interviewed by FBI Special Agent (SA) Scott

Martin and Department of Commerce Special Agent Bryan Pabin.

The interview was video recorded. A copy will be filed with the Court in the

traditional manner. *See* Exhibit 1. According to the recording, the interview began

3

at approximately 8:16 am. *Id*. Mr. Hasanzadeh was not handcuffed during any portion of the interview. *Id*. Instead, he sat at a table and spoke to the agents; he was offered food, drink and breaks throughout, whenever he wanted. *Id*.

At the beginning of the interview, Hasanzadeh was specifically informed that he had been "placed under arrest," which Hasanzadeh acknowledged. *Id*. FBI SA Martin then slowly and methodically read Mr. Hasanzadeh's *Miranda* rights to him in English. *Id*. Hasanzadeh was informed that he had the right to remain silent and that anything that he said could be used against him in court. Hasanzadeh acknowledged this right. *Id*. Hasanzadeh was then informed that: (a) he had a right to talk to a lawyer for advice before the agents asked him any questions; (b) he had a right to have a lawyer present with him during questioning; and (c) if he could not afford a lawyer one would be appointed for him before questioning. *Id*. Hasanzadeh again acknowledged these rights. FBI SA Martin then informed Hasanzadeh that if he decided to answer questions now, without a lawyer present, he had the right to stop answering questions at any point. Again, Hasanzadeh acknowledged his rights. *Id*.

FBI SA Martin then asked: "Those are your rights; do you understand?" Again, Hasanzadeh indicated that he did. Hasanzadeh indicated that he was willing to speak to the agents, and the interview proceeded. *Id*.

Hasanzadeh then answered the agents' questions for the next several hours. Throughout the entire 4 ¾ hour interview, Hasanzadeh spoke in coherent English,

never giving the interviewing agents any indication that he did not understand English. *Id*. He answered every single question in English. *Id*. He never requested an interpreter, never indicated that he had trouble speaking or understanding English, and never said that he did not understand a single question. *Id*.

The interviewing agents were calm, respectful and professional throughout. *Id*. They never raised their voices, threatened Hasanzadeh in any way, or acted aggressively toward Hasanzadeh. *Id.* The agents provided Hasanzadeh with food and beverages and repeatedly asked him if he needed to use the bathroom or take a break. Every request was honored and three breaks were taken during the interview (totaling approximately 30 minutes of the 4 ¾ hour interview).[1] *Id*.

The interview was, moreover, conducted in a conversational tone. *Id*. And, during the interview, Hasanzadeh was shown much of the evidence that comprised the government's case. *Id*. The evidence was discussed and Hasanzadeh was given a chance to offer his perspective. *Id*. During the interview, Hasanzadeh made numerous admissions regarding his exportation of technology to Iran, his knowledge of the Iranian embargo, the illegality of his actions, and why, in his mind, he exported the technology to Iran notwithstanding its illegality (among other admissions). *Id*.

---

[1] The breaks occurred at one hour and fifty-eight minutes, at three hours and twenty minutes and at four hours and eleven minutes. Exhibit 1.

According to the recording, the interview ended at approximately 12:56 pm. *Id*. Hasanzadeh was then offered lunch and he was taken to duty court so he could be processed by the Marshals and make his initial appearance before a federal Magistrate Judge. Hasanzadeh made his initial appearance the very same afternoon and was temporarily detained pending a detention hearing two days later. ECF No. 5, PageID.19. The audio file suggests that the initial appearance occurred at 3:50 pm. *Id*. On November 8, 2019, the Court held a detention hearing and ordered Hasanzadeh detained pending trial.  ECF No. 10, PageID.24.

      **b.**    **<u>Defendant's Motion to Suppress</u>**

Hasanzadeh does not dispute that he indicated to the agents that he understood his rights and consented to be interviewed. ECF No. 61, PageID.333 (he "allegedly indicated that he understood and consented to be interviewed without the presence of an attorney"). Hasanzadeh claims, however, that his consent was, nonetheless, involuntary because: (a) he really did not understand the significance of his rights because they were not offered in his first language (Farsi); and (b) he did not understand the purpose of the interrogation. ECF No. 61, PageID.339.

## II.   Argument

### a.   Legal Standard

Statements made in response to custodial police interrogation must be suppressed unless the suspect first waived his *Miranda* rights "voluntarily, knowingly and intelligently." *United States v. Ramamoorthy,* 949 F.3d 955, 964 (6th Cir. 2020). Waiver is voluntary when "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id*. (*quoting Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). It is intelligent when it is made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.* To determine whether a waiver is valid, a court examines the totality of the circumstances. *Id*.

Importantly, the waiver inquiry, including the voluntariness and comprehension aspects of the waiver, is examined "primarily from the perspective of the police, such that where [the] police had no reason to believe that [the defendant] misunderstood the warnings, ... there is no basis for invalidating [the] *Miranda* waiver." *Id*. (*quoting United States v. Al-Cholan*, 610 F.3d, 945, 954 (6th Cir. 2010) (*quoting Garner v. Mitchell*, 557 F.3d 257, 263 (6th Cir. 2009) (en banc)). It is the government's burden to establish a waiver by a preponderance of the evidence. *United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009).

7

> **b.    Hasanzadeh Knowingly, Voluntarily and**
> **Intelligently Waived his Miranda Rights**

Hasanzadeh's motion makes two arguments. First, he argues that he never

really subjectively understood the significance and consequences of waiving his

rights because he did not understand the purpose of the interrogation, *i.e.*, he did

not realize that charges had been filed against him or that the agents intended to

use his statements as additional evidence against him. ECF No. 61, PageId.339,

341-42. Apparently, Hasanzadeh argues that if he had specifically known what he

was charged with or that the agents intended to use his statement as evidence

against him, he would not have waived his rights. Hasanzadeh's argument is

wrong, both legally and factually.

To begin with, Hasanzadeh was specifically told, at the onset, that he had

been "placed under arrest" and that "anything [he] said [could] be used against

[him] in court." He was, therefore, fully apprised that his statements could be used

as evidence against him in court, as required by *Miranda*.

Second, the Supreme Court and the Sixth Circuit have both recognized, over

and over again, that a defendant's desire for more information about the

significance and consequences of his waiver is not required or even relevant to

assess whether a suspect made a knowing, intelligent and voluntary waiver. In

*Colorado v. Spring*, the Supreme Court held that the Court has never "read the

Constitution to require that the police supply a suspect with the flow information to

help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Colorado v. Spring*, 479 U.S. 564, 576-77 (1987). Such additional information "could affect only the wisdom of a *Miranda* waiver, not its essentially voluntary and knowing nature." *Id*. at 577. Stated differently, the "relevant question is not whether the 'criminal suspect [knew] and [understood] every possible consequence of a waiver . . .' but rather whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time.'" *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009); *United States v. Crumpton*, 824 F.3d 593, 607 (6th Cir. 2016); *Adams*, 583 F.3d at 467. This is because the relevant constitutional principles are aimed not at protecting people from themselves but at curbing abusive police practices by public officers. *Garner*, 557 F.3d at 262.

Accordingly, "a suspect's awareness of all of the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly and intelligently waived his Fifth Amendment privilege." *Spring*, 479 U.S. at 577. Indeed, contrary to what Hasanzadeh argues, the fact that a suspect does not know the subject matter or purpose of the investigation, or the charges being investigated, or even that he or she is going to be arrested, does not invalidate a suspect's waiver of his or her *Miranda* rights. *United States v. Davis*, 796 F. App'x 274, 276 (6th Cir. 2019) (possible subjects of questioning is not relevant to determining whether the suspect voluntarily,

knowingly and intelligently waived his Fifth Amendment privilege); *see also*
*United States v. Phillips*, 230 F. App'x 520, 523-24 (6th Cir. 2007) (rejecting claim
that *Miranda* waiver was involuntary because the defendant did not know the
interview concerned his involvement in child pornography—he thought the
interview concerned crimes committed by his girlfriend); *United States v. Valdez*,
16 F.3d 1324, 1328-30 (2d Cir. 1994) (fact that the defendant did not know that he
was about to be arrested was not relevant to the voluntariness of his confession).
Hasanzadeh's claims lack merit and should be summarily rejected.

Hasanzadeh also argues that his waiver was involuntary because Farsi, rather
than English, is his first language and he was never asked if he wanted an
interpreter to read him his rights. ECF No. 61, PageID.341-42. But, the fact that
Hasanzadeh's first language is Farsi does not render Hasanzadeh's waiver
involuntary. As was noted above, the waiver inquiry is examined primarily from
the perspective of law enforcement. *Ramamoorthy,* 949 F.3d at 964. And here,
nothing in the interrogation video (or anything else known before or after the
interview) would have suggested that Hasanzadeh did not speak and understand
English.

The recorded interview (Exhibit 1) speaks for itself. Hasanzadeh spoke in
coherent English throughout the interview, never giving the interviewing agents
any indication that he did not understand English. He answered every single
question in English. He never requested an interpreter, nor did he indicate that he

10

did not understand English, had trouble speaking or understanding English, or did not understand any of the agents' questions. *Id*. Hasanzadeh and the agents discussed wide ranging and complicated topics, both specific to the case at hand and more broadly related U.S./Iranian relations—all in English. The agents were, moreover, courteous, professional and respectful throughout the interview. They never raised their voice and they maintained a calm demeanor at all times. Hasanzadeh was not handcuffed and was offered breaks, along with food and beverages, throughout the interview. There is simply nothing in the interview that would have led the officers to believe that Hasanzadeh did not speak and understand English.

This conclusion is consistent with every fact known about Hasanzadeh, both before and after interview—Hasanzadeh's claim is just not believable or credible. Hasanzadeh is highly educated. He has a PhD, Masters, and an undergraduate degree in electrical engineering. Exhibit 2 (resume). He was fifth in his class as an undergraduate, second in his class for his masters, and he placed third in standing for his entrance exam for his PhD in power engineering. *Id*.

Hasanzadeh arrived in the United States in January 2011 and, therefore, had lived in the United States for nearly nine years at the time of his interview. *See* Exhibit 3 (I-485 Application for Permanent Residence Status).

During this time period, Hasanzadeh conducted research at large United States universities (Florida State and the University of Maryland) and worked in

the private sector as a hardware engineer—positions where he would have to speak English all, if not most of the time. *See* Exhibit 4 (updated resume). He has published—alone or with others—numerous journal articles and conference papers, most of which were written in English. *Id*.; see *also Exhibit* 5 (sample journals and papers). He was also a visiting scholar at the University of Michigan for nearly three years before his interview. *See* Exhibit 4.  And, in June 2016, he represented that his English was "Advanced" when applying for a job. *See* Exhibit 6 (page bates numbered 432717).

Even more significant, Hasanzadeh swore, under penalty of perjury, that he could read and understand English on multiple occasions. He did so on February 24, 2013, when he signed his I-485 application for Permanent Resident Status. *See* Exhibit 3 (application page 7). He did so again on May 29, 2018, when he signed his N-400 Naturalization Application. *See* Exhibit 7 (page 17 of application). And, on March 7, 2018, Hasanzadeh was interviewed by the United States Citizenship and Immigration Services; he spoke in English and did not request an interpreter. *See* Exhibit 8 (sworn statement).

Mr. Hasanzadeh has also appeared at multiple hearings in this case. He has never requested an interpreter or stated that he did not understand the proceedings in English. He did not do so at this initial appearance. ECF No. 5, PageID.19 (audio file). Or his detention hearing. ECF No. 11, PageID.27. (audio file). Or when he was arraigned on the Indictment. ECF No. 23, PageID.97. Or during the

March 2, 2021 motion hearing. ECF No. 52, PageID.218-19, 225-27, 232-33. Or the April 6, 2021 motion hearing. ECF No. 53, PageID.240. Or during the August 11, 2021 motion hearing in which Mr. Hasanzadeh made extensive remarks and answered questions that were against his counsel's advice and addressed potential attorney-client privilege issues. ECF No. 54, PageID.261, 264-69, 271-73. Or during the October 18, 2021 motion hearing and status conference.[2] ECF No. 70, PageID.509-10, 515-18, 521-23.

And, Mr. Hasanzadeh has written three lengthy letters to the Court, all in English. ECF No. 37, PageID.169; ECF No. 40, PageID.178; ECF No. 42, PageID.181.

Similar claims have been easily rejected by the Sixth Circuit in comparable situations. For example, in *Ramamoorthy*, the defendant claimed, just as Hasanzadeh does here, that he did not knowingly and intelligently waive his *Miranda* rights because he did not speak English fluently and did not truly understand the consequences of his waiver—namely that his statements would be used as evidence against him in court. *Ramamoorthy*, 949 F.3d at 959. Ramamoorthy specifically claimed that as an Indian citizen and H1-B visa holder,

---

[2] Hasanzadeh's claims regarding understanding English, if true (which they are not) would, in fact, jeopardize the validity of every hearing held in this case, hearings in which legal issues were discussed (and Hasanzadeh was questioned by both the District Court and Magistrate Judge) without the assistance of an interpreter.

he did not truly understand his rights and the consequences of waiving them

because of his impressions of the Indian legal system and his belief that the

American system would be similar. *Id*. at 965. The Sixth Circuit rejected

Ramamoorthy's argument based on the interrogation video, which showed

Ramamoorthy conversing in coherent English with the agents, who were

professional and courteous throughout. *Id*. The Court concluded:

> Even assuming that Ramamoorthy subjectively believed
> that he simply had to tell the agents what they wanted to
> hear, the officers would have had no way of knowing that
> this was his understanding. Our review of the
> interrogation video reveals that the officers conducted
> themselves respectfully and professionally, making no
> threats and speaking with a calm demeanor. By
> responding in coherent English, asking thoughtful
> questions, nodding his head, and signing his initials after
> reading each right aloud, Ramamoorthy gave every
> indication to the agents that he understood his rights and
> the consequences of waiving them.

*Id*.

Similarly in *United States v. Al-Cholan*, the defendant argued that he did not

knowingly and intelligently waive his *Miranda* rights because he did not speak

English fluently, claiming he had a minimal understanding of English. *Al-Cholan*,

610 F.3d at 953. The court agreed with the district court that Al-Cholan understood

English sufficiently well to render his *Miranda* waiver knowing, voluntary and

intelligent. *Id*. at 954. The court explained that Al-Cholan conversed naturally with

the agents in English during the interview, had lived in the United States for 12

years, had passed an English proficiency test and swore under penalty of perjury that he could speak and understand English, had briefly spoken to the agent in English before his arrest, had indicated that he spoke English, and had completed an English language medical questionnaire. *Id*. Accordingly, the court concluded that the agents had no contemporaneous reason to doubt that Al-Cholan understood his *Miranda* warnings in English. *Id*.; *see also United States v. Alvarez*, 54 F. Supp. 2d 713, 716-18 (W.D. Mich. 1999).

In the end, Hasanzadeh knowingly, intelligently and voluntarily waived his *Miranda* rights. Hasanzadeh spoke coherently in English throughout the interview, never giving the interviewing agents any indication that he did not understand English. This is consistent with Hasanzadeh's conduct both before and after the interview. Nothing would have led the interviewing agents to conclude that Hasanzadeh needed a Farsi interpreter to understand his rights. And, as the Sixth Circuit has observed: "there is nothing cognitively complex about the advice that one has a right to remain silent and not to talk to the police."[3]   *Finley v. Rogers*, 116 F. App'x 630, 638 (6th Cir. 2004).

---

[3] Hasanzadeh also argues that his confession was involuntary because he was not re-*Mirandized* after breaks during the interview (three breaks were taken for a total of 30 minutes). ECF No. 61, PageID.342. Hasanzadeh cites no case law in support of the novel proposition that he needed to be *Mirandized* each time a short break was taken, and none exists. This is because a suspect only needs to be readvised of his rights "if the circumstances seriously change[]  between the initial warnings and the interrogation." *Treesh v. Bagley*, 612 F.3d 424, 432 (6th Cir. 2010); *Wyrick v. Fields*, 459 U.S. 42, 47 (1982). The Sixth Circuit has even held

Hasanzadeh's 18 U.S.C. § 3501 argument fails for the exact same reasons—his statements were entirely voluntary. He made his initial appearance on the very same afternoon he was arrested. He was told he was under arrest at the onset of the interview and he was advised of his legal rights. He was 42-years old at the time of the interview and was highly educated and highly intelligent. He spoke fluent English the entire time. He was not deprived of food, water, sleep or any other comfort during the interview—the exact opposite is true—he was given food and water, and breaks were taken any time he wanted one (three in total). He was not physically or emotionally compromised at the time of the interview. Nor was he physically or emotionally abused in any way. The agents did not even raise their voices during the interview. And, the agents made no improper promise or guarantee nor was Hasanzadeh coerced in any way.

## III.   <u>An Evidentiary Hearing is Not Required</u>

Even under Hasanzadeh's most favorable interpretation of the recorded interview, controlling Sixth Circuit case law forecloses his argument. Accordingly, the Court should deny his motion without a hearing. *See* E.D. Mich. L. Cr. R. 12.1(a); E.D. Mich. L.R.7.1(f)(2).

---

that a two-hour delay between *Miranda* warnings and an interrogation did not require refreshed warnings. *Treesh*, 612 F.3d at 432.

## IV.    **CONCLUSION**

For the reasons stated above, Hasanzadeh's motion should be denied. And, because the motion can be decided based on the recorded interview alone, under controlling Sixth Circuit case law, an evidentiary hearing is not required.

Respectfully submitted,

Dawn N. Ison
United States Attorney

s/ *Douglas C. Salzenstein*
Douglas C. Salzenstein
Assistant U.S. Attorney
211 W. Fort St.
Detroit, MI 48226
doug.salzenstein@usdoj.gov

s/ *Adam P. Barry*
Adam P. Barry
Trial Attorney
National Security Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 233-0788
adam.barry@usdoj.gov

17

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2022, I filed the foregoing Response

using the Court's CM/ECF system, which will send notice to all registered parties.

s/ *Douglas C. Salzenstein*
Assistant U.S. Attorney